UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AWAD JOHNSON,                                              DECISION AND ORDER
                                                           10-CV-2604 (WFK)
                       Plaintiff,

       -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION; JOEL I. KLEIN, as Chancellor
for the New York City Department of Education;
MARIANNE T. FERRARA, individually and
in her capacity as Superintendent of Community
School District No. 22; PHYLLIS F. MARINO,
individually and in her capacity as Principal at
I.S. 78,

                       Defendants.

-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, UNITED STATES DISTRICT JUDGE:**

Plaintiff Awad Johnson brings this action after being denied tenure as an intermediary school principal in the New York City public school system. Alleging that his tenure was denied because of his race, Plaintiff asserts claims for violations of Title VII of the Civil Rights Act; the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983; and 42 U.S.C. § 1981. Before the Court is Defendants' Motion for Summary Judgment. Defendants contend that Plaintiff has failed to establish a *prima facie* case of racial discrimination. Additionally, they offer non-discriminatory reasons for denying Plaintiff tenure. As the undisputed facts fail to establish that Plaintiff was denied tenure under circumstances giving rise to an inference of discrimination, the Court holds that Plaintiff cannot state a *prima facie* case for discrimination and, accordingly, grants Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

### I. Events Leading to Denial of Plaintiff's Tenure

Plaintiff has been employed by Defendant New York City Department of Education ("DOE") since October 1986. Dkt. 52 (Pl.'s Decl. in Opp. to Mot. for Summary Judgment

—1—

("Pl.'s Decl.")), ¶ 3. Plaintiff first worked as a school aide and para-professional before becoming a teacher in September 1991. *Id.* ¶¶ 3–4. In March of 2003, Plaintiff was appointed Assistant Principal ("AP") at Roy H. Mann Intermediate School ("I.S. 78") for a five-year probationary period. *Id.* ¶ 5. At the completion of the five-year period, Plaintiff was eligible for tenure. *Id.*

Plaintiff served as an AP under five different principals at I.S. 78. Dkt. 47 (Defs.' R. 56.1 Statement of Undisputed Facts ("Defs.' St.")), ¶ 5. From April 2006 to September 2007, non-party William Woods served as principal of I.S. 78 and supervised Plaintiff. *Id.* In March and April 2006, after two incidents involving a student bringing a loaded .45 caliber semi-automatic pistol to the school, I.S. 78 was placed on the State of New York's Persistently Dangerous School List ("the List"). *Id.* ¶ 7. During this time, Plaintiff was I.S. 78's School Safety Designee. *Id.* ¶ 6.

In June 2006, Woods gave Plaintiff an "S" (or "satisfactory") rating. *Id.* ¶ 9. Woods stated in his deposition that he gave Plaintiff an "S" because Woods had only been at I.S. 78 for a few months. *Id.*[1] In June 2007, I.S. 78 was removed from the List and Plaintiff again received a satisfactory rating from Woods. Defs.' St. ¶ 10. Woods testified at his deposition that he gave Plaintiff a satisfactory rating because of Plaintiff's work as School Safety Designee and role in removing I.S. 78 from the List. *Id.* ¶ 11.[2] Woods also testified that despite giving Plaintiff an

---

[1] Plaintiff disputes this reasoning, arguing that Woods had a duty to consult with the prior principal but did not, and that Woods also had a duty to conduct an independent investigation of Plaintiff's file. Pl.'s St. ¶ 8. Plaintiff also notes that Woods did not indicate any "reservations" on the requisite section of the DOE form. *Id.* ¶ 9.

[2] Plaintiff disputes this reasoning too. He argues that his review should have been based upon *all* of his goals and objectives for that school year and that Woods tailored his depositions to be consistent with those of the individual defendants. Pl.'s St. ¶¶ 10–11; Pl.'s Decl. ¶ 36.

"S," he believed that Plaintiff could improve his instructional leadership, which includes supervising and observing teachers, and controlling classrooms. Defs.' St. ¶ 12.[3]

Defendant Phyllis Reggio (formerly known as and referred to in the Complaint and Plaintiff's papers as Phyllis "Marino") took over as principal at the beginning of the 2007-08 school year. *Id.* ¶ 5. Upon arrival, she asked Plaintiff to remain in the role of School Safety Designee. *Id.* ¶¶ 22, 24; Pl.'s Decl. ¶¶ 60, 68. And while there is some disagreement as to how many times and the exact nature of this request,[4] it is undisputed that Plaintiff declined to continue in this position, citing his 2007-08 school year responsibilities with the 8th grade students. Pl.'s St. ¶ 24; Pl.'s Decl. ¶ 61; Defs.' St. ¶ 22.

## II. Denial of Tenure

On January 2, 2008, Reggio verbally informed Plaintiff that he would not be granted tenure. Pl.'s Decl. ¶ 7. The next day, Defendant Marianne T. Ferrara, Superintendent of Community School District No. 22, formally denied Plaintiff tenure in a written letter. *Id.* ¶ 8.

In support of the denial of tenure, Defendants cited Plaintiff's refusal to stay on as School Safety Designee; his failure to implement instructional initiatives, particularly with teacher evaluations; and his failure to order student textbooks. Defs.' St. ¶ 24. Defendants allege that Plaintiff gave every teacher that he observed a satisfactory rating, even when Woods or Reggio would have given the teacher an unsatisfactory rating. *Id.* ¶¶ 13, 21. At her deposition, Reggio

---

[3] Plaintiff believes this criticism was unwarranted, improper, and never articulated to him. Pl.'s St. ¶¶ 10–12; Pl.'s Decl. ¶¶ 36–37.

[4] Plaintiff readily admits that Reggio told Plaintiff "it would be nice" if he continued to serve as the School Safety Designee. Pl.'s St. ¶ 24; Pl.'s Decl. ¶ 60. However, Plaintiff also states that Reggio "never 'asked' or 'requested' or 'assigned' or 'directed' or 'ordered' plaintiff to serve as school safety designee." Pl.'s St. ¶ 24. Plaintiff's rhetorical flourishes aside, Reggio's statement to her subordinate employee that "it would be nice" for him to continue in a position is at the very least "asking" and the Court finds no *genuine* dispute between the parties as to that point.

testified that Plaintiff was requested to order 500 student textbooks in September 2007, but failed to do so and then lied when asked about the incident. *Id.* ¶ 23. Reggio also testified that race was not a factor in the decision to deny Plaintiff tenure. *Id.* ¶ 24.

During their tenures, both individual Defendants appointed African-American APs. *Id.* ¶ 27. Reggio appointed an African-American AP, Gwendolyn Wiggins-Walcott, as one of Plaintiff's replacements. *Id.* Ferrera appointed at least six African-American APs. *Id.* Ferrera granted tenure to at least three African-American APs. *Id.* During Ferrara's time as superintendent, the only two individuals to whom she denied tenure were Plaintiff and a Caucasian. *Id.* Furthermore, while AP Cusumano covered Plaintiff's duties for the remainder of the 2007-08 school year following Plaintiff's tenure denial, one of the ultimate replacements for Plaintiff, namely Wiggins-Walcott, was African-American. *Id.*

Plaintiff opposes Defendants' factual allegations. He provides two teacher review reports from 2006 in which he gave teachers unsatisfactory ratings. Pl.'s Decl. ¶ 34; Dkt. 57-1 (Decl. of Etta Ibok ("Pl.'s Ex.")), Ex. 13.[5] Plaintiff also requests that the Court strike Reggio's testimony because Reggio did not identify the teachers that she believed deserved unsatisfactory ratings.[6] Pl.'s St. ¶ 23; Pl.'s Decl. ¶¶ 32–33. With regards to book ordering, Plaintiff denies that he failed to fulfill the book order and characterizes Reggio's testimony as a fabrication to cover up her discriminatory animus. Pl.'s St. ¶ 26. Citing to his own declaration, Plaintiff alleges that Anthony

---

[5] These reviews were responsive to Defendants' documents requests, yet Plaintiff failed to produce them until attaching them in support of his summary judgment opposition. Dkt. 40 (Defs.' Reply Br. ("Reply")), at 3. Despite Plaintiff's failure to produce these documents, the Court has taken all of Plaintiff's exhibits into consideration in deciding this motion. As the Court holds below that Plaintiff has failed to state a *prima facie* case for discrimination, even considering the unproduced documents, Plaintiff's improper discovery practices will not prejudice Defendants.

[6] However, Plaintiff offers no evidence to undermine Reggio's statement that there were teachers that Plaintiff rated as satisfactory that Reggio believed were unsatisfactory.

Cusumano, another AP for the 2007-08 school year and a Caucasian male, volunteered to purchase the books, but then failed to obtain authorization for the payments to the vendor. *Id.*; *see also* Pl.'s Decl. ¶¶ 72–76. Plaintiff testified that as soon as he was informed that the books had not been delivered, he resolved the situation within one hour. Pl.'s Decl. ¶ 75.

The parties present mixed evidence regarding Plaintiff's discrimination claims. At his deposition, Plaintiff testified that he liked working with Reggio and noted that she awarded him a letter of accommodation in November, prior to denying him tenure. Defs.' St. ¶ 26; *see also* Dkt. 49 (Decl. of Daniel Chiu ("Defs.' Ex.")), Ex. B (Deposition of Awad Johnson) at 58:12–13. Plaintiff further testified that he never heard either individual Defendant—neither Superintendent Ferrara nor Principal Reggio (together the "individual Defendants")—make a derogatory statement about his race. Defs.' St. ¶ 26; *see also* Defs.' Ex. B. at 47:8–10. When asked, Plaintiff could provide no example of Reggio harboring a discriminatory animus towards him prior to the denial of his tenure. Defs.' Ex. B at 58:14–24. Plaintiff does not dispute these facts. *See* Dkt. 53 ("Pl.'s Sur-Reply"), at 4–5.[7]

Nonetheless, Plaintiff points to one statement as the basis of his discrimination allegation. When Reggio verbally informed Plaintiff that he was being dismissed, Reggio allegedly told

---

[7] Plaintiff's Rule 56.1 Statement failed to comply with the Local Rules of this Court requiring that such counterstatements "include correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party." Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") 56.1(b). The Court could have deemed all of Defendants' statements that were not "specifically controverted by a correspondingly numbered paragraph" as admitted. *See* Local Rule 56.1(c). However, Plaintiff attempted to remedy his failure to comply with the Local Rules by including a chart in his sur-reply brief identifying which paragraphs in Pl.'s R. 56.1 St. correspond to the paragraphs in Defs.' R. 56.1 St. *See* Pl.'s Sur-Reply at 4–5. The Court has reviewed this chart to identify disputed statements instead of deeming all of the Defendants' statements as admitted. *See Holtz v. Rockerfeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009), ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Plaintiff that "he did not 'fit in' as an administrator at the school." Pl.'s St. ¶ 31. This statement was made in connection with Reggio's unsatisfactory review following Plaintiff's alleged failure to continue serving as School Safety Designee, failure to order textbooks, and failure to provide adequate teacher reviews. *See* Defs.' St. ¶ 24.

Plaintiff speculates that when Reggio said he did not "fit in," she meant that Plaintiff "did not 'fit in' as an administrator in a school with a predominantly African-American student population, but which was located in a predominantly white neighborhood whose residents were overtly hostile to the minority students bused into their neighborhood from the outside, had been hostile to the African-American principal [previously running] the school, and the outdoor greeting billboard on the school premises had been used on more than one occasion to openly express racist sentiments." Pl.'s Decl. ¶ 79. According to Plaintiff, this racial dynamic has caused tension between the residents and the "bused in" minority students. *Id.* ¶ 42; Pl.'s St. ¶ 35.[8]

In support of his interpretation, Plaintiff recounts that, during an April 2006 region-wide parents' meeting (prior to Reggio joining the school) some of the residents stated that black children were not welcome at I.S. 78. Pl.'s Decl. ¶ 43. That same month, a large sign was placed on I.S. 78's marquee, stating: "DIE RAT NIGGER GO HOME." *Id.* In 2007, another sign was put on the same marquee, stating: "DIE GOONS." *Id.* Plaintiff also claims that Reggio "acknowledged in informal conversations that the Black students were not welcomed in the neighborhood and in the school [by members of the community] and that she herself did not really want some of them in the school either. Reggio also stated that Black students were the ones bringing down the grades in the school." *Id.* ¶ 45. Plaintiff admits that no racial innuendo was expressed toward him, but, rather,

---

[8] According to Plaintiff, while he was at I.S. 78, approximately 68 to 71 percent of students at the school were African-Americans. Pl.'s Decl. n. 86.

these past comments contributed to his "interpret[ation]" of Reggio's statement at the time he was denied tenure. *Id.* ¶ 41.

Additionally, Plaintiff points out that he was the only African-American administrator at I.S. 78 at the time he was denied tenure. Pl.'s St. ¶ 35. The only previous black principal of I.S. 78, Jennifer Canton, was forced to resign in April 2006 because of the racial animosity at the school. *Id.* ¶ 35; Pl.'s Decl. ¶ 46; *see also* Defs.' St. ¶ 5. Following Canton's departure, I.S. 78 was identified as a "racial incident" school. Pl.'s Decl. ¶ 46. Accordingly, Reggio was directed to have a meeting with community members to discuss and examine the most efficient way to resolve the racial issues at the school. *Id.* ¶ 46. Plaintiff maintains that Reggio was against such a meeting and never held one. *Id.* ¶ 48. Plaintiff further claims that after he prodded Reggio to hold the meeting, she "responded that she did not want to bring Al Sharpton and his rabble-rousers into her building and added that she already knows that there is a problem and that the community does not want the Black students in the school." *Id.* ¶ 49. However, in his deposition, Plaintiff affirmed that Reggio never made a derogatory statement about his race. Defs.' St. ¶ 26; *see also* Defs.' Ex. B. at 47:8–10.

## PROCEDURAL BACKGROUND

After being denied tenure, Plaintiff appealed to the Chancellor's Committee. Defs.' St. ¶ 25. Plaintiff, who was not represented at the hearing, *see* Pl.'s St. ¶ 41, lost that appeal as the Committee unanimously concurred with Reggio and Ferrara's decision to deny Plaintiff tenure as an AP. Defs.' St. ¶ 25. The Committee's report, effective as of March 1, 2008, concluded that Plaintiff "did not fulfill the professional responsibilities expected of him . . . did not implement the instructional directives from [Reggio] which were meant to respond to the deficiencies noted in the previous year's School Quality Review . . . did not implement [Reggio's] administrative

mandate that every pupil be issued a textbook for every subject . . . refused to remain as the School's Supervisor of Safety – a position he had held during the previous administration - had a negative impact on this crucial element for the school community." *Id.* Plaintiff alleges that the Committee "simply rubber-stamped the decision" to deny his tenure. Pl.'s St. ¶ 37.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2008. Dkt. 57-15 (Pl.'s Ex. 50). After an investigation, the Commission determined that "there [was] reason to believe" Plaintiff had been discriminated against when he was denied tenure. *Id.* at 55. On March 22, 2010, the EEOC informed Plaintiff that the United States Department of Justice would not be filing a suit based on his allegations and that he was free to bring an action under Title VII of the Civil Rights Act of 1964 within 90 days. *Id.* at 56. This action promptly followed.

Plaintiff filed a Complaint in the United States District Court for the Eastern District of New York on June 8, 2010 and the case was assigned to the Hon. United States District Judge Allyne R. Ross. Dkt. 1 ("Compl."). The Complaint alleges three causes of action related to the denial of Plaintiff's tenure and seeks declaratory, injunctive, and monetary relief. Plaintiff named Principal Reggio and Superintendent Ferrara as Defendants in both their individual and official capacities. Plaintiff also sued the DOE and DOE Chancellor Joel I. Klein in his official capacity. Plaintiff asserted claims for violations of Title VII of the Civil Rights Act, the Equal Protection clause of the federal Constitution pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1981. Compl. ¶¶ 34–42. Defendants answered the Complaint on September 13, 2010. Dkt. 7.

On October 17, 2011, the case was reassigned to this Court. Dkt. 37. On March 16, 2012, Defendants sought a pre-motion conference for leave to file a motion for summary judgment. At the pre-motion conference, the Court granted Defendants leave to bring their

motion and re-opened discovery. Minute Entry of 4/27/12. The Court twice granted extensions of time for Plaintiff to file his papers and allowed Plaintiff to file a sur-reply over the objection of Defendants. Dkts. 38, 39, 42. The motion was fully briefed and submitted to the Court on April 5, 2013. Dkts. 46–54.

On March 28, 2013, Plaintiff requested a pre-motion conference to brief the admissibility of the transcript from the Office of Appeal and Review proceeding and the final decision of the Chancellor's Committee. Dkt. 44. Plaintiff contended that both documents were inadmissible hearsay and should be stricken from the record. *Id.* This Court referred the issue to the Hon. United States Magistrate Judge Victor Pohorelsky. *See* Dkt. Entry of 3/28/2013. During a hearing before Judge Pohorelsky, the parties agreed that "instead of making a separate motion, the letter submitted by the [P]laintiff [Dkt. 44] and the letter submitted by the [D]efendants in response [Dkt. 45] shall be considered part of the record on summary judgment such that the arguments made in the letters will be deemed to be before the court and considered by the court in rendering its decision." Dkt. 56. This Court has taken the parties' letters under consideration in deciding this motion.

Having set the stage for Defendants' motion, we turn to the merits.

## DISCUSSION

### A. Summary Judgment Standard

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to

evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

### B. *McDonnell Douglas* Standard

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race [or] color[.]" 42 U.S.C. §

2000e–2(a)(1). Section 1983 provides plaintiffs with the power to bring a suit if they have been subjected, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a).

In the seminal case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Supreme Court set forth a three-step burden-shifting analysis for courts to apply when analyzing claims of discrimination under Title VII. Courts employ the same burden-shifting analysis when evaluating disparate treatment claims brought under § 1983 and § 1981. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) ("For a claim of employment discrimination under 42 U.S.C. §§ 1981 and 1983, we apply the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*."); *see also Bowen-Hooks v. City of N.Y.*, 10-CV-5947, 2014 WL 1330941, at *16 (E.D.N.Y. Mar. 31, 2014) (Brodie, J.) (same). First, a plaintiff must establish a *prima facie* case of discrimination, *see McDonnell Douglas Corp.*, 411 U.S. at 802, by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). "Although the burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, No. 06–CV–2150, 2011 WL 1131104, at *5 (E.D.N.Y. Mar.

28, 2011) (Vitaliano, J.) (internal citations omitted) (citing *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998)).

If a plaintiff establishes a *prima facie* case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *accord Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal citations omitted). Once the employer satisfies this burden, "the presumption of discrimination drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotations and citations omitted).

### C. Plaintiff has Failed to State a *Prima Facie* Case of Discrimination

"As the *McDonnell Douglas* framework requires, Plaintiff first must satisfy his burden of establishing a *prima facie* case of discrimination" before the Court will consider whether the reasons for denying his tenure were legitimate. *Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 202–03 (E.D.N.Y. 2012) (Kuntz, J.) *aff'd*, 522 F. App'x 46 (2d Cir. 2013). The fourth requirement for Plaintiff to state a *prima facie* case of discrimination requires that he allege "circumstances giving rise to an inference of discrimination." *Cruz*, 202 F.3d at 567. "[I]n presenting a *prima facie* case of discriminatory discharge [P]laintiff must present proof that [his] discharge occurred in circumstance giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). The only relevant inquiry is whether Plaintiff has come forward with enough evidence "from which a rational fact finder

could infer unlawful discriminatory animus on the part of [Defendants]." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 96 (2d Cir. 1994); *see also Randolph v. CIBC World Markets*, 01-CV-11589, 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005) (Sweet, J.). When a plaintiff fails to present "evidence to establish any such causal link between his termination and his race" summary judgment is appropriate. *Randolph*, 2005 WL 704804, at *12.

Defendants contend that Plaintiff has presented no such proof. They argue that the undisputed facts provide no indication that Plaintiff's denial of tenure was based upon his race. The Court agrees with Defendants. The fact that Plaintiff, by his own admission, was never subjected to discriminatory comments or animus by either of the individual Defendants, that Reggio awarded him a commendation in November 2007, and that both individual Defendants hired other African-American APs—including Plaintiff's replacement—after denying Plaintiff tenure, all weigh heavily against establishing a *prima facie* case of discrimination. Plaintiff has attempted to manufacture circumstances giving rise to an inference of discrimination by generally referring to unrelated racial tensions between the local community and I.S. 78's students and stray remarks. This will not suffice.

The most significant undisputed fact is Plaintiff's admission that neither individual Defendant ever made a derogatory statement to him about his race. Defs.' St. ¶ 26; *see also* Defs.' Ex. B. at 47:8–10. This admission is illustrative of Plaintiff's failure to present even minimal proof that his tenure denial was driven by discrimination. Furthermore, at his deposition, Plaintiff could provide no example of an occasion when Reggio exhibited discriminatory animus towards Plaintiff prior to the denial of his tenure. Defs.' Ex. B at 58:14–24. Plaintiff "was afforded ample opportunity to present evidence that [D]efendants acted with discriminatory animus and [has] failed to adduce such evidence." *Chamberlant v. A & P, et al.*, 247 F. App'x 237, 238 (2d Cir.

2007). A plaintiff who admits that he was never subjected to discriminatory comments and never had occasion to complain about discriminatory treatment, absent facts indicating otherwise, cannot make out a *prima facie* case for discrimination under either Title VII, § 1983, or § 1981. *See Boyce v. Bank of N.Y.*, 226 F. App'x 17, 19 (2d Cir. 2006).

The parties do not dispute that Plaintiff received a commendation from Reggio in November 2007. *See* Pl.'s St. ¶ 27; Dkt. 51 (Pl.'s Br. in Opp. ("Pl.'s Br.")), at 8. They do, however, dispute its relevance to the question at hand. *See* Reply at 7–8. The Court agrees with Defendants that "the receipt of the commendation [actually] undermines [P]laintiff's claim that Principal Reggio was motivated by discriminatory animus." Reply at 8. "It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff." *Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 233 (E.D.N.Y. 2009) (Glasser, J.).

Further crippling to Plaintiff's effort to establish a *prima facie* case of discrimination is that after denying Plaintiff tenure, both individual Defendants appointed African-American APs. Defs.' St. ¶ 27. Defendant Ferrara also granted tenure to at least three African-Americans. *Id.* Additionally, one of the "replacement" APs that took over for Plaintiff was African-American.[9]

---

[9] Here, Plaintiff attempts to create a factual dispute where none exists. *See* Pl.'s St. ¶ 40; Pl.'s Decl. ¶ 78. Plaintiff points to the fact that individual Defendants appointed African-American APs only after Plaintiff commenced this discrimination action. Pl.'s St. ¶ 40. This does not create a factual dispute. And Plaintiff cites no cases to this Court in which the chronology of the replacement hiring changes the analysis.

Furthermore, Plaintiff argues that Defendant was not replaced by Wiggins-Walcott, an African-American, but by Margaret Graves or Anthony Cucumano, both Caucasians. *See* Pl.'s Sur-Reply at 8–9 (citing Pl.'s Ex. 51, Interrogatory 8, at 6). However, Plaintiff selectively cites to the Interrogatory, which objects to the question "on the grounds it is vague and ambiguous with respect to the term 'replaced' and assumes facts that have not been established." (Ex. 51 at 6). Additionally, in her declaration, Reggio stated that Wiggins-Walcott replaced Plaintiff. Defs.' Ex. M ¶ 3. Lastly, Plaintiff does not dispute that Reggio appointed Wiggins-Walcott as one of

*Id.*; Defs.' Ex. M, Decl. of Phyllis Reggio, ¶ 3; *see also* Pl.'s Decl. ¶ 78 ("[Reggio] appointed Gwendolyn Wiggins-Walcott as Assistant Principal after she denied me tenure and after I had commenced this discrimination action."). "Where no [other] evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a *prima facie* case of discrimination." *Morris v. N.Y. City Dep't of Sanitation*, 99-CV-4376, 2003 WL 1739009, at *5 (S.D.N.Y. Apr. 2, 2003) (Knapp, J.); *see also Randolph*, 2005 WL 704804, at *12 (collecting cases). Here, Plaintiff's discrimination claim is diminished in light of the individual Defendants' subsequent hiring of and granting of tenure to African-American APs as well as hiring a member of Defendant's protected class as one of his replacements.

Plaintiff also argues that the satisfactory ratings that he received from the prior I.S. 78 principals is evidence that Reggio's unsatisfactory rating was driven by discriminatory animus. *See* Pl.'s Br. at 11. However, courts in this Circuit have found that a change in performance reviews, without more, does not lead to an inference of discriminatory motive. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717–18 (2d Cir. 1994) (rejecting inference of discrimination or pretext merely from negative performance review following positive reviews); *see also Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 222 (E.D.N.Y. 2002) (Gershon, J.) (finding no inference of pretext when new management placed greater emphasis on employee's sales numbers resulting in worse evaluations of plaintiff); *Brown v. Time, Inc.*, 95-CV-1008, 1997 WL 231143, at *12 (S.D.N.Y. May 7, 1997) (Mukasey, J.) ("a change in management's evaluation of an employee's performance cannot by itself raise an inference of

---

the APs at I.S. 78 following his departure. Pl.'s Decl. ¶ 78. In sum, reading all of the evidence together, at a school with multiple APs, there is no genuine dispute that Wiggins-Walcott was one of the APs hired to replace Plaintiff for the next school year.

pretext); *Beers v. NYNEX Material Enters. Co.*, 88-CV-305, 1992 WL 8299, at *11 (S.D.N.Y. Jan. 13, 1992) (Mukasey, J.) (same). Inferring discrimination is "even less permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda . . . . even if those expectations are contrary to a prior manager's expectations." *Gambello*, 186 F. Supp. 2d at 222 (quoting *Beers*, 1992 WL 8299, at *11 and *Brown*, 1997 WL 231143, at *12). That Plaintiff received better ratings from Principal Woods, under different circumstances, cannot result in an inference of discrimination against Principal Reggio. *See Davis v. Oyster Bay-East*, 03-CV-1372, 2006 WL 657038, at *11 (E.D.N.Y. Mar. 9, 2006) (Feuerstein, J.) (finding the "mere fact that Plaintiff had a better relationship with or received better evaluations from previous supervisors does not, on its own, raise an inference of discrimination" especially where defendant's "criticisms were race-neutral, and based on specific, and often documented instances of Plaintiff's poor performance"), *aff'd*, 220 F. App'x 59. In light of the specific reasons Reggio articulated for denying Plaintiff tenure[10] and the changes between her administration and prior principals, there is no basis on which to infer a discriminatory basis for Reggio's unsatisfactory review of Plaintiff.

The last of Plaintiff's contentions that merits discussion is his attempt to convert I.S. 78's history of racial tensions into evidence of discriminatory animus on the part of Reggio. One of the unofficial, verbal reasons that Plaintiff was denied tenure at I.S. 78 was that Reggio believed that Plaintiff "did not 'fit in' as an administrator at the school." Pl.'s St. ¶ 31. This reason was given in addition to denying Plaintiff tenure because of his alleged failure to properly administer

---

[10] Whether Reggio's evaluations were accurate is not the question at hand. The question for the Court is whether those stated reasons were the motivation for Defendants' decision to deny Plaintiff tenure. *See McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer,' . . . the factual validity of the underlying imputation against the employee is not at issue.") (internal citations omitted).

teacher evaluations, refusal to serve as School Safety Designee, and alleged failure to order textbooks. *See* Defs.' St. ¶ 24. Plaintiff, however, relies on a series of events, most of which occurred before Reggio became principal, to explain the "significan[ce]" of Reggio's comment. Pl.'s Br. at 9. Specifically, Plaintiff lists unrelated incidents—individuals in the community posting signs on the school marquee, the school's status as a "racial incident" school, and Reggio's alleged refusal to host a meeting regarding racial issues between I.S. 78's students and the local community—without providing any indication of how these events were linked to the staffing decision regarding Plaintiff. Plaintiff asks this Court to make an inferential leap, one that goes well beyond reading the undisputed facts in Plaintiff's favor, to find that I.S. 78's racial tensions were imbedded in Reggio's comment, which lacked any objective indicia of racial motive. In fact, Plaintiff readily admits that Reggio never made a derogatory remark to him at any prior point during their working relationship. Defs.' St. ¶ 26; *see also* Defs.' Ex. B. at 47:8–10. This admission further undermines the alleged "significance" Plaintiff reads into Reggio's comment regarding Plaintiff "fitting in" as an administrator at I.S. 78. Ultimately, Plaintiff asks this Court to rely on his own speculation as the basis for finding an inference of discrimination. However, to do so would be inappropriate and the Court declines Plaintiff's request. *See Bickerstaff*, 196 F.3d at 448, 452 (instructing that district courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture" and finding that plaintiff's counsel merely attributing racial reasons to a statement lacking any hint of racial motivation is "insufficient to defeat a properly supported motion for summary judgment").

Plaintiff also highlights Reggio's informal statements, made in discussions about the community-student tensions, in which she said that she also did not want some of the bused-in

African-American students at I.S. 78 and blamed those students for bringing down the school's grades. *See* Pl.'s Decl. ¶ 45. However, Plaintiff did not identify the statements as reflecting a discriminatory animus towards him during his deposition. *See* Defs.' St. ¶ 26; *see also* Defs.' Ex. B. at 47:8–10; 58:14–24. Furthermore, the statements were made as part of a discussion of the school-community issues, and Plaintiff offers no link between those statements and the decision regarding his tenure review. "[S]tray comments . . . without some demonstrable connection to plaintiff's discharge, are insufficient to give rise to an inference of discrimination." *Bailey v. Frederick Goldman, Inc.*, 02-CV-2429, 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006) (Griesa, J.); *cf. Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (finding stray remarks supported an inference of discrimination when directly targeted at the members of the protected class whom defendant took adverse employment action against). Here, Reggio's comments lack any discernible connection to the denial of Plaintiff's tenure or employment decisions in general. And even if Reggio's statements were discriminatory, they were too few and temporally isolated from the decision regarding Plaintiff to establish an inference of discrimination. *See Gobin v. New York City Health & Hospitals Corp.*, 04-CV-3207, 2006 WL 2038621, at *6 (S.D.N.Y. July 19, 2006) (Pauley, J.) (holding a "few and isolated" discriminatory statements were insufficient to establish an inference of discrimination, absent further indicia of discrimination).

"Although the burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford*, 2011 WL 1131104, at *5. Furthermore, a trial court shall not permit the non-moving party on a motion for summary judgment to rely upon unsubstantiated speculation in opposing such a motion. *See Forsyth v. Fed'n Empl. & Guidance*

*Serv.*, 409 F.3d 565, 573 (2d Cir. 2005), *abrogated on other grounds by Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), ("On a motion for summary judgment in a discrimination case the plaintiff must provide the trial court with more than his own conclusory allegations declaring discrimination was present.").

Plaintiff's unfounded allegations and conjecture, here, do not establish a *prima facie* case of discrimination. Plaintiff has failed to produce evidence that would lead a reasonable fact-finder to conclude that his termination occurred because of his race or that his race was a consideration in the decision to deny him tenure. Therefore, Plaintiff has failed to raise an inference of discrimination sufficient to satisfy the fourth element required to state a *prima facie* claim of discrimination. *See Randolph*, 2005 WL 704804, at *12 (finding no inference of discrimination where plaintiff could not identify anyone at the Defendant-business who had discriminated against him, was replaced by a member of his protected class, and there was no evidence of discriminatory animus towards plaintiff).

### D. Defendants Are Entitled to Summary Judgment as a Matter of Law

Plaintiff's failure to allege a *prima facie* case for discrimination under the *McDonnell Douglas* framework vitiates his claims under § 1981, § 1983, and Title VII. *See McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010) (failure to set forth a *prima facie* case of discrimination, specifically the failure to allege an inference of discrimination, necessarily eliminates plaintiff's ability to assert a claim under §§ 1981, 1983). Accordingly, the Court need not consider Plaintiff's arguments regarding the alleged pre-textual nature of Defendants' reasons for denying him tenure nor his arguments regarding *Monell* liability for the City of New York under § 1983.

## CONCLUSION

Defendants' Motion for Summary Judgment is hereby GRANTED. Accordingly, Plaintiff's Complaint is DISMISSED in its entirety. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 19, 2014
      Brooklyn, New York